**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | |
|---|---|
| ELIZAMA BECERRA, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-00345-RLY-MJD |
| THE TJX COMPANIES, INC., | |
| Defendant. | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................. 1

DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ......................... 2

I.   TJX HIRES PLAINTIFF AS A BACKROOM COORDINATOR FOR THE
     GRAND OPENING OF ITS JASPER, INDIANA STORE. ............................................... 2

II.  PLAINTIFF COMPLETES NEW-HIRE ONBOARDING PAPERWORK AND
     COMMENCES WORKING AT THE JASPER, INDIANA STORE. ................................. 3

III. TJX'S EEO AND HEALTH SAFETY POLICIES. ......................................................... 3

IV.  TJX'S OVERTIME POLICY. ........................................................................................ 4

V.   PLAINTIFF'S JOB PERFORMANCE DECLINES SHORTLY AFTER HER
     DATE OF HIRE. ............................................................................................................ 5

VI.  PLAINTIFF SUFFERS A WORKPLACE INJURY, WHICH TJX PROMPTLY
     REPORTS TO ITS WORKERS' COMPENSATION CARRIER. ................................... 6

VII. TJX ACCOMMODATES PLAINTIFF'S WORK RESTRICTIONS. ............................... 7

VIII. TJX INFORMS PLAINTIFF THAT IT MISPLACED HER NEW HIRE
     PAPERWORK, ASKS HER TO COMPLETE NEW ONBOARDING
     PAPERWORK, AND SHE REFUSES TO DO SO. ......................................................... 8

ARGUMENT ...................................................................................................................... 11

I.   STANDARD OF REVIEW ........................................................................................... 11

II.  PLAINTIFF'S RETALIATORY DISCHARGE CLAIM MUST BE DISMISSED. ........... 11

     A.   PLAINTIFF VOLUNTARILY RESIGNED WHEN SHE REFUSED TO
          SIGN REPLACEMENT ONBOARDING DOCUMENTS, MOST
          IMPORTANTLY, AN I-9 FORM. ........................................................................12

     B.   PLAINTIFF'S EMPLOYMENT SEPARATION HAS NO CASUAL
          CONNECTION TO HER PROTECTED ACTIVITY. ...........................................14

CONCLUSION .................................................................................................................... 16

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Byerly v. Prairie Farms Dairy, Inc.*,
  No. 2:15-CV-401-WTL-MJD, 2017 WL 3117013 (S.D. Ind. July 21, 2017) ............14, 15, 16

*Caskey v. Colgate–Palmolive Co.*,
  535 F.3d 585 (7th Cir. 2008) ...............................................................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................................11

*Cripe, Inc. v. Clark*,
  834 N.E.2d 731 (Ind.Ct.App.2005)..........................................................................12, 13, 14

*Frampton v. Central Indiana Gas Co.*,
  260 Ind. 249 (1973)....................................................................................................... *passim*

*Gawley v. Indiana University*,
  276 F.3d 301 (7th Cir. 2001) ...............................................................................................13

*Hamann v. Gates Chevrolet, Inc.*,
  910 F.2d 1417 (7th Cir. 1990) .............................................................................................14

*Hannemann v. Southern Door County School Dist.*,
  673 F.3d 746 (7th Cir. 2012) ...............................................................................................11

*Hudson v. Wal-Mart Stores, Inc.*,
  412 F.3d 781 (7th Cir. 2005) ...............................................................................................12

*Markley Enterprises, Inc. v. Grover*,
  716 N.E.2d 559 (Ind. Ct. App. 1999)...................................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................................................11

*Mullins v. Lobdell Emery, Inc.*,
  NA 01-3-C B/S, 2002 WL 459040 (S.D. Ind. March 21, 2002).............................................12

*Powdertech, Inc v. Joganic*,
  776 N.E.2d 1251 (Ind.Ct.App.2002)........................................................................12, 15, 16

*Tony v. Elkhart County*,
  851 N.E.2d 1032 (Ind.Ct.App.2006).....................................................................................12

*Tyler v. Runyon*,
 70 F.3d 458 (7th Cir. 1995) ...................................................................................11

*Watkins v. Sommer Metalcraft Corp.*,
 844 F. Supp. 1321 (S.D. Ind. 1994) ......................................................................14

*Woliung v. City of Lawrenceburg*,
 No. 4:05-CV-0090-SEB-WGH, 2007 WL 9757789 (S.D. Ind. Mar. 30, 2007).....................12

**Statutes**

Indiana Workers' Compensation Act...........................................................................4

**Other Authorities**

Fed. R. Civ. P. 56.......................................................................................................1

Fed. R. Civ. P. 56(a) ................................................................................................11

Local Rule 56-1...........................................................................................................1

Defendant The TJX Companies, Inc. ("TJX"), by its attorney, Seyfarth Shaw LLP, and

pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, hereby submits this Motion for Summary

Judgment:

## INTRODUCTION

TJX opened a brand new T.J. Maxx store in Jasper, Indiana in the Fall of 2019.  As part

of a mass hiring event for the new store, TJX hired Plaintiff Elizama Becerra ("Plaintiff") on

September 5, 2019, as a Backroom Coordinator.  Plaintiff and the other new hires completed

onboarding paperwork, including I-9 Employment Eligibility forms ("I-9 Forms"), on iPads

during new-hire orientation.  The new-hire paperwork should have been electronically uploaded

to TJX's Talent Management System, but TJX discovered in November 2019 that, due to a

technological glitch, some new-hire paperwork for six store associates, including Plaintiff, was

not saved.  TJX requested that each of the store associates sign replacement onboarding

paperwork, including I-9 Forms.  And all of the store associates signed the forms without

incident and without filing a lawsuit related to the same, but for Plaintiff who refused to do so.

Plaintiff's managers repeatedly requested that Plaintiff sign the paperwork and eventually gave

Plaintiff a deadline to provide the replacement paperwork.  However, Plaintiff continued to

refuse to sign the paperwork and then never returned to work at TJX, resigning her employment.

 Despite these facts, Plaintiff now claims that TJX terminated her employment as

"retaliation" for filing a workers' compensation claim in violation of Indiana common law.

Plaintiff's claim fails because she cannot prove actual or constructive discharge, given that her

employment ended due to her own voluntary choice not to provide a replacement I-9 Form and

other required onboarding documentation to TJX.  Plaintiff's claim also fails because she has no

evidence to establish the requisite causal connection between the separation of her employment

and her filing of a workers' compensation claim.  Plaintiff's employment ended for the simple

reason that she refused to provide TJX with documentation that was legally required for her continued employment and then chose to abandon her job.  Plaintiff's common law retaliatory discharge claim thus fails as a matter of law and TJX respectfully requests the Court grant its motion for summary judgment in its entirety.

<u>**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

**I.    TJX HIRES PLAINTIFF AS A BACKROOM COORDINATOR FOR THE GRAND OPENING OF ITS JASPER, INDIANA STORE.**

TJX opened a brand new store, Store No. 1558, in Jasper, Indiana in the Fall 2019. (Deposition of Plaintiff ("P. Dep.") 60:1-23, 71:6-8; Deposition of Lowe ("Lowe Dep.") 9:4-6). Katlyn Lowe ("Lowe") was the Store Manager.  (Lowe Dep. 8:19-25, 9:1-6).  Two Assistant Store Managers, Mallory Baker ("Baker") and Merida Hostettler ("Hostettler"), reported to Lowe.  (Lowe Dep. 9:17-25, 10:1, 10:16-17).  Lowe reported to District Manager George Saunders ("Saunders").  (Lowe Dep. 9:17-25, 10:1, 10:16-17).  Saunders visited the store approximately twice per month to oversee sales, employee development, and customer service at a high level.  (Deposition of George Saunders ("Saunders Dep.") 8:9-13).

Prior to the grand opening of the store, Lowe and Saunders interviewed Plaintiff for a Backroom Coordinator position.  (P. Dep. 60:1-4, 19-25, 61:1-5, 62:12-25, 63:1-5; Lowe Dep. 12:21-25; Saunders Dep. 9:14-25, 10:1-25, 11:1-5).  Plaintiff's interview took place at a nearby hotel as part of open mass interviews for the new store.  (P. Dep. 60:1-4, 19-25, 61:1-5, 62:12-25, 63:1-5; Lowe Dep. 12:21-25; Saunders Dep. 9:14-25, 10:1-25, 11:1-5).

Saunders and Lowe decided to hire Plaintiff.  (Lowe Dep. 14:23-24; Saunders Dep. 9:14-25, 10:1-12).  According to Plaintiff, they both informed her that they thought she was the "right fit" for the job.  (P. Dep. 63:1-5).  TJX officially hired Plaintiff on September 5, 2019.  (P. Dep., 60:1-10, 71:6-8).  Her starting wage was $13.00 per hour.  (P. Dep. 73:10-17).

## II.    PLAINTIFF COMPLETES NEW-HIRE ONBOARDING PAPERWORK AND COMMENCES WORKING AT THE JASPER, INDIANA STORE.

Plaintiff and others who were offered a job attended orientation to fill out new-hire onboarding paperwork at a hotel near the Jasper, Indiana store, which was not yet open at the time of the orientation.  (P. Dep. 63:1-25; 64:1-7; 67-71; Lowe Dep. 12:5-10; Saunders Dep. 11:6-25; 12:1-9).  The new-hire onboarding paperwork Plaintiff completed are Exhibits 1-6 to her deposition transcript.  (P. Dep. 67-71; P. Dep. Ex. 1-6).  Included within this paperwork is an I-9 Form.  (P. Dep. Ex. 1; Lowe Dep. 12:20-21).  An I-9 Form is used to verify the identity and employment of individuals hired for employment in the United States.  (P. Dep. 64:1-14; Lowe Dep. 12:20-21).  Plaintiff testified that she is aware that all employers in the United States must properly complete an I-9 for each individual that they hire for employment and that both employees and employers must complete this form.  (P. Dep. 64:20-25, 65:1-25).  Plaintiff and the other new hires completed their new-hire onboarding paperwork on an iPad that was set up to be uploaded to TJX's Talent Management System ("TMS") thereafter.  (Lowe Dep. 13:5-25; 14:5-9).

## III.    TJX'S EEO AND HEALTH SAFETY POLICIES.

At orientation, Plaintiff was provided with a copy of TJX's Global Code of Conduct ("Code of Conduct").  (P. Dep. 75:1-14).  The Code of Conduct expressly prohibits harassment and discrimination based on any legally protected status.  (P. Dep. 75:5-25, 76:1; P. Dep. Ex. 8 at 000099).  TJX's policies also expressly prohibit retaliation against individuals who make good faith complaints about harassment or discrimination or otherwise engage in protected activity.  (P. Dep. 76:7-9; P. Dep. Ex. 8 at 000100).  Plaintiff understood that the Code of Conduct applied to her employment.  (P. Dep. 76:11-14).

The Code of Conduct contains a Health and Safety Policy.  (P. Dep. 77:10-20; P. Dep. Ex. 8 at 000102).  The Health and Safety Policy expressly provides that Store Associates should report any accident or injury, no matter how minor, to their immediate supervisor.  (P. Dep. 77:14-16; P. Dep. Ex. 8 at 000102; Lowe Dep. 22:19-24, 23:2-5, 23:17-21; Saunders Dep. 13:18-24).  TJX posted a Workers Compensation Notice in the employee breakroom which stated that TJX is required to provide for payment of benefits under the Indiana Workers' Compensation Act and noted that any employee who is injured at work should report the injury immediately to their supervisor, employer, or designated representative.  (P. Dep. 77: 20-25, 78:1-13; P. Dep. Ex. 9).  The Notice also provides information about rights and procedures under the Indiana Workers' Compensation law.  (P. Dep. 78:10-13; P. Dep. Ex. 9).

When a member of management is informed that an employee has suffered a workplace injury, they call Zurich, TJX's third-party insurance carrier.  (Lowe Dep. 23:6-13).  Management explains the details of the injury to a Zurich agent and Zurich creates a report.  (Lowe Dep. 23:6-13).  Zurich processes and manages the claim from there, including investigating the claim, communicating directly with the injured employee, approving doctor's appointments, requesting from TJX whether any video footage of the incident surrounding the injury exists, and the like.  (Lowe Dep. 24:5-11, 27:5-9, 36:9-17).

## IV.   TJX'S OVERTIME POLICY.

A typical schedule for a full-time Coordinator is just over 30 hours per week.  (Saunders Dep. 26:22-25, 27:1-7).  When a new store opens, however, TJX often offers overtime opportunities because of the amount of work needed to get the store ready for customers.  (Saunders Dep. 26:22-25, 27:1-7).  As such, Store Associates, including Plaintiff, had the chance to work overtime hours during the Jasper, Indiana store's grand opening.  (Saunders Dep. 26:22-25, 27:1-7).  After a store's grand opening, TJX does not schedule or offer overtime as a matter

of course outside of busy times, such as during the holiday season.  (Lowe Dep. 16:13-18;

Saunders Dep. 27:1-7).

## V.      PLAINTIFF'S JOB PERFORMANCE DECLINES SHORTLY AFTER HER DATE OF HIRE.

As a Backroom Coordinator, Plaintiff was responsible for receiving and keeping track of

the merchandise and inventory boxes coming in and out of the store and ensuring all of the line

inventory work is done correctly.  These responsibilities included, but were not limited to, taking

merchandise out of boxes, hanging merchandise appropriately, putting security censor tags on

merchandise, and otherwise ensuring that merchandise is flowing out to the correct areas of the

store in a timely manner. (P. Dep. 71:10-25, 72:1-25, 73:1-9; P. Dep. Ex. 7; Lowe Dep. 18:3-7;

Saunders Dep. 13:10-17).

Following the grand opening of the store in September 2019, Lowe assessed Plaintiff's

performance in her first few weeks of work as average.  (Lowe Dep. 19:13-24) ("If I was using

the five-point scale, [I'd assess it as] a 3.").  Plaintiff's performance declined thereafter.  (Lowe

Dep. 20:3-8).  For example, Lowe personally observed Plaintiff laying on a bench taking an

unauthorized break instead of working.  (Lowe Dep. 20:15-18).  Lowe often found the backroom

in disarray when Plaintiff was overseeing it.  (Lowe Dep. 20:20-24).  Assistant Managers and

Store Associates also complained to Lowe that Plaintiff took unnecessary breaks and was not

overseeing the backroom team or performing her job duties.  (Lowe Dep. 20:5-9, 21:1-4).  Lowe

verbally counseled Plaintiff and provided her with "on-the-spot feedback" between three and five

days a week regarding these performance issues to give Plaintiff the chance to improve.  (Lowe

Dep. 21:15-24, 22:2-3).

**VI.     PLAINTIFF SUFFERS A WORKPLACE INJURY, WHICH TJX PROMPTLY REPORTS TO ITS WORKERS' COMPENSATION CARRIER.**

Plaintiff alleges that she suffered an injury in TJX's backroom warehouse on Saturday, October 19, 2019.  (P. Dep. 81:11-25, 82:1-2).  TJX was short staffed that day, so Plaintiff was helping other Store Associates clear stacks of boxes of inventory that were on pallets, unseal and open the boxes, and break down boxes after inventory was removed.  (P. Dep. 82:7-25, 83:1-25, 84:1-8).  Boxes of inventory are placed on a "line" which has rollers and sends the boxes to the front of the store, where items are stocked.  (P. Dep. 85:21-25, 86:1-7).  Plaintiff claims that she injured one of her arms when she was trying to remove a box that was heavy and situated high upon a pallet.  (P. Dep. 84:9-16; 86:23-25).  Plaintiff claims that the box fell on her and the weight fell on one of her arms.  (P. Dep. 84:9-16).  Store Associate, Norma Corrales-Ochoa, helped her gain control of the box.  (P. Dep. 84:9-16, 88: 4-6).

Plaintiff continued to work through the day because she was not in a lot of pain at the time.  (P. Dep. 89:5-9).  She did not report her injury to any member of TJX management that day because she thought she may have just experienced a minor injury that would not require workers' compensation benefits.  (P. Dep. 89:24-25, 90:1-17).  Plaintiff claims that the next day she woke up with severe pain and inflammation in her arm, so she iced it and took ibuprofen.  (P. Dep. 90:23-25, 91:1-4).  The next day, Monday, October 21, 2019, she sought medical treatment at Memorial Hospital in Jasper, Indiana, who ordered her to make an appointment for follow up care with an orthopedic surgeon.  (P. Dep. 91:1-19).  That same day she went into the Jasper, Indiana store to inform Lowe that she had been injured at work and to provide Lowe with documentation from her doctor requesting that she be excused from work.  (P. Dep. 92:6-24).  Her doctor ordered that she remain off of work on Monday, October 21, 2019 through Wednesday October 23, 2019.  (P. Dep. 91:20-23).  Plaintiff returned to work on Thursday,

6

October 24, 2019.  (P. Dep. 91:24-25, 92:1-2, 95:18-21).  Her arm was in a sling.  (P. Dep. 96:20-21).

As soon as Plaintiff informed Lowe that she was injured at work, Lowe reported Plaintiff's injury to TJX's workers' compensation carrier.  (P. Dep. 95:1-2; Lowe Dep. 30:19-25).  TJX has cameras in certain areas of the store. (Lowe Dep. 24:12-19).  Store Managers do not have independent access to camera footage and must request access from District Loss Prevention Managers ("DLPM").  (Lowe Dep. 24:12-25).  At the time of Plaintiff's injury, the DLPM assigned to the Jasper, Indiana store was Ryan Carpenter.  (Lowe Dep. 24:12-25).  Carpenter reviewed the footage with Lowe and Saunders, but there was no footage of Plaintiff's injury captured in the store's cameras.  (Lowe Dep. 24:12-25, 25:14-15).

## VII.   TJX ACCOMMODATES PLAINTIFF'S WORK RESTRICTIONS.

Between October 25, 2019 and October 27, 2019, Plaintiff was unable to perform her full job and was off from work per her doctor.  (P. Dep. Ex. 10; P. Dep. 96:17-19).  On Monday, October 28, 2019 her doctor released her to return to work with the following restrictions: "No overhead use of the involved/injured extremity.  May be used to lightly assist the opposite extremity; maximum lifting of 5 lbs; avoid repetitive motions and vibratory tools."  (P. Dep. Ex. 11).

Based on Plaintiff's medical restrictions, TJX moved Plaintiff into a Frontend Coordinator role.  (P. Dep. 102:2-14; Lowe Dep. 32:11-23; Saunders Dep. 20:1-25, 21:1-4).  Plaintiff's job duties in this role consisted of moving clothing and products from the backroom to the front of the store that did not involve heavy lifting and overseeing customer service in the checkout area.  (P. Dep. 102:2-14; Saunders Dep. 20:1-25, 21:1-4).  Plaintiff's job classification and hourly rate of pay ($13.00/hour) remained unchanged.  (P. Dep. 102:21-24; Saunders Dep. 20:1-14).  According to Plaintiff, after her injury she told Assistant Store Manager Baker that she

also could no longer work certain shifts due to physical therapy sessions that she was attending

due to her injuries.  (P. Dep. 184:7-10; *see also* Ex. A, Managers' Notes).  As a result, she

worked fewer hours after her injury due to her doctor's appointments.  (Ex. B, Plaintiff's

Paycheck Stubs).

      After TJX moved Plaintiff from a Backroom Coordinator to a Frontend Coordinator role

to allow her to work within her restrictions, Plaintiff began telling other Store Associates that she

was no longer a Coordinator.  (Lowe Dep. 39:11-21, 40:7-25, 41:1-25; Saunders Dep. 19:17-25,

20:1-14; P. Dep. 25:12-14).  Both Lowe and Saunders reiterated that Plaintiff's classification of

"Coordinator" had not changed; she was simply working in a Frontend Coordinator position

overseeing Store Associates in the front of the store versus a Backroom Coordinator role

overseeing Associates in the backroom due to her workplace restrictions.  (Lowe Dep. 32:11-2,

39:11-21, 40:7-25, 41:1-25; P. Dep. 25:12-14).

      Plaintiff also began telling other Store Associates that "T.J. Maxx was following her"

and/or watching her, even outside of work.  (P. Dep. 125:22-25, 126:1-25, 127:1-25, 128:1-24;

Am. Compl., ECF No. 1-1, ¶23; Lowe Dep. 44:11-25, 45:1; Ex. A, Managers' Notes).  Lowe has

no knowledge of TJX or Zurich hiring anyone to follow Plaintiff or any other TJX employee

who has filed a workers' compensation claim.  (Lowe Dep. 44:11-25, 45:1-8).

## VIII.   TJX INFORMS PLAINTIFF THAT IT MISPLACED HER NEW HIRE PAPERWORK, ASKS HER TO COMPLETE NEW ONBOARDING PAPERWORK, AND SHE REFUSES TO DO SO.

      TJX had technological issues when it opened the Jasper, Indiana store and put employees

through the onboarding process.  (Lowe Dep. 46:5-25).  The original new-hire onboarding

paperwork filled out by Plaintiff and five other Store Associates (including Daniel Boutwell,

Backroom Coordinator; Julio Rosales, Sales Associate; Faustina Lueken, Customer Experience

Coordinator; Jessica Yennie, Merchandise Coordinator and Key Carrier; Brittany Smith, Former

Sales Associate) was lost somewhere on the cloud, TJX's internet-based server.  (Lowe Dep. 46:5-25; Saunders Dep. 23:2-25, 24:1; Ex. C, TJX's Interrogatories Responses).  TJX attempted to recover the original onboarding paperwork through its help desk to avoid asking these Store Associates to fill it out again, but their original paperwork could not be recovered.  (Lowe Dep. 46:5-25).

As a result, TJX came to Plaintiff and the five Store Associates to inform them that it misplaced their onboarding documentation and asked them to complete replacement paperwork, most importantly, replacement I-9 Forms. (Lowe Dep. 46:5-25; P. Dep. 137:6-25, 138:1-10). Specifically, Lowe set up a table in the managers' office and she, Baker, and Hostettler called in all of the affected employees to apologize for the loss of their paperwork and to ask them to complete new onboarding documentation.  (Lowe Dep. 47:22-25, 48:1-4).  Plaintiff refused to complete new paperwork and said she wanted to have her lawyer look at the paperwork.  (Lowe Dep. 48:1-25; P. Dep. 138:1-19).  Plaintiff testified that she believed that completing new paperwork would have somehow changed her date of hire.  (P. Dep. 138:1-19).  All of the other Store Associates completed replacement paperwork without incident.  (Lowe Dep. 47:4-6).

Lowe asked Plaintiff several more times to complete replacement onboarding paperwork, but each time she refused.  (Lowe Dep. 49:18-25, 50:1-7).  Plaintiff would just repeat "I already signed this.  I'm not signing this."  (Lowe Dep. 50:1-7).  Saunders and Lowe eventually met with Plaintiff together to request that she complete replacement paperwork.  (Lowe Dep. 50:3-23; Saunders Dep., 24:2-24).  Saunders explained that in order for Plaintiff to remain employed at TJX, she must complete replacement onboarding documents, most significantly, an I-9 Form. (Lowe Dep. 50:3-23, 51:15-23; Saunders Dep., 24:2-25, 25:1-21).  Plaintiff again refused. (Lowe Dep. 50:3-23; Saunders Dep., 24:2-25, 25:1-21).  As a result, Lowe and Sanders together

with Human Resources gave Plaintiff until the end of the week following Saunders' meeting

with her to complete the replacement paperwork.  (Lowe Dep. 50:3-25, 51:1-25, 52:1-25, 53:1-

25; P. Dep. 140:19-25; Saunders Dep. 28:14-25, 29:1-19).

Prior to that deadline, on November 13, 2019, Plaintiff claims that she had a meeting with

Lowe and Saunders where they allegedly told her that TJX could not continue to employ her

without an I-9 Form and she had 24 hours to sign and return that form or she would be fired.

(Lowe Dep. 53:2-18; P. Dep. 140:2-8, 22-25, 141:1-8; Saunders Dep, . 23:1-25, 24:1-25, 25;1-

21, 27:8-25, 28:1-19).  In response, Plaintiff called the police.  (Lowe Dep. 53:4-18; P. Dep.

140:2-8, 22-25, 141:1-25.  When the police arrived, they told Lowe that Plaintiff had called

them.  (Lowe Dep. 53:4-25; P. Dep. 141:4-8).  Lowe did not know why Plaintiff called the

police, so she directed them to Plaintiff's work area in the back of the store.  (Lowe Dep. 53:4-

25).  Plaintiff alleged to the police that she "was being thrown out unjustly" by TJX.  (Lowe

Dep. 53:4-25; P. Dep. 141:7-25).  Plaintiff hid in a janitor's closet talking on the telephone with

someone, until the police found her and spoke to her in the break room and asked her to leave the

store.  (Lowe Dep. 53:4-25, 54:1-25, 55:1-25, 56:1-25; P. Dep. 141:4-25 ("The police officer

said I needed to leave.")).  Plaintiff admits that she subsequently never returned any of the

onboarding forms, including the I-9 Form to TJX, or returned back to work at the store.  (P. Dep.

140:19-25, 141:1-5; Lowe Dep. 53:4-25, 54:1-25, 55:1-25, 56:1-25, 57:1-9).  November 13,

2019 was the last day Plaintiff worked at the store.  (Lowe Dep. 53:4-25, 54:1-25, 55:1-25, 56:1-

25; P. Dep. 140:2-8, 141:2-5).  Based on Plaintiff's failure to turn in an I-9 Form, Lowe

processed Plaintiff's separation of employment as a voluntarily resignation.  (Lowe Dep. 57:21-

25, 58:1-25, 59:1-7).

## ARGUMENT

## I.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is designed to dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  *Id*. at 327.  Summary judgment should be granted if the record reveals, with all inferences drawn in favor of the non-moving party, that no reasonable jury could find in his favor.  *Id*. at 324.

In considering the facts in a light most favorable to Becerra, the Court is "not required to draw every conceivable inference from the record," it "need draw only reasonable ones." *Hannemann v. Southern Door County School Dist*., 673 F.3d 746, 751 (7th Cir. 2012) (quoting *Tyler v. Runyon*, 70 F.3d 458, 467 (7th Cir. 1995)).  Thus, to withstand summary judgment, Becerra must do more than simply show that there is "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Here, there is no genuine dispute as to any material fact, and Defendant is entitled to judgment as a matter of law.

## II.    PLAINTIFF'S RETALIATORY DISCHARGE CLAIM MUST BE DISMISSED.

Plaintiff's sole claim before this Court is for workers' compensation retaliation under the Indiana common law.  (P. Dep. 153:23-25, 154:1-11).  Plaintiff's common law retaliatory discharge action is commonly called a "Frampton" claim.  *Frampton v. Central Indiana Gas Co*., 260 Ind. 249 (1973).  In the case from which it derives its name, the Indiana Supreme Court held

that an employer may not discharge an employee in retaliation for filing a workers' compensation claim. *See Markley Enterprises, Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999).

"To maintain a Frampton claim, [plaintiff] must establish a causal connection between h[er] termination and the filing of h[er] workers' compensation claim." *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 785 (7th Cir. 2005) (addressing Indiana law). Her *prima facie* case thus consists of three elements: (1) she filed a workers' compensation claim; (2) she was terminated from her employment; and (3) there is a causal connection between the filing of her workers' compensation claim and her termination. *Mullins v. Lobdell Emery, Inc.*, NA 01-3-C B/S, 2002 WL 459040, at *4 (S.D. Ind. March 21, 2002).

Plaintiff's claim fails on the latter two prongs. First, Plaintiff's claim fails because she voluntarily resigned by refusing to sign an I-9 Form required for her continued employment. Second, even if Plaintiff could prove that TJX terminated her, there is no casual connection between her workers' compensation claim and the separation of her employment.

### A.    Plaintiff Voluntarily Resigned When She Refused To Sign Replacement Onboarding Documents, Most Importantly, An I-9 Form.

Plaintiff's claim fails because she cannot prove the second element of her claim, which requires her to show that TJX terminated her employment. Discharge—actual or constructive—is an essential element of a *Frampton* claim. *See Powdertech, Inc v. Joganic*, 776 N.E.2d 1251, 1261–62 (Ind.Ct.App.2002). Constructive discharge occurs "when an employer purposefully creates working conditions [that] are so intolerable that an employee has no other option but to resign." *Tony v. Elkhart County*, 851 N.E.2d 1032, 1037 (Ind.Ct.App.2006) (citing *Cripe, Inc. v. Clark*, 834 N.E.2d 731, 735 (Ind.Ct.App.2005)). Constructive discharge in a *Frampton* claim under Indiana law is analyzed akin to constructive discharge cases brought under Title VII. *See Woliung v. City of Lawrenceburg*, No. 4:05-CV-0090-SEB-WGH, 2007 WL 9757789, at *2

(S.D. Ind. Mar. 30, 2007) (analyzing constructive discharge *Frampton* claim under Indiana law and citing standard for constructive discharge in Title VII harassment claim in *Gawley v. Indiana University*, 276 F.3d 301 (7th Cir. 2001)).  The standard by which a constructive discharge is determined is an objective one: "whether a *reasonable* person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit."  *Cripe, Inc*., 834 N.E.2d at 735 (internal citations omitted) (emphasis added).

Here, Plaintiff was not actually or constructively discharged.  Plaintiff chose not to turn in employment forms that were required for continued employment despite being given multiple opportunities to do so.  Plaintiff even testified that she understood TJX could not continue to employ her without an I-9 Form.  (P. Dep. 64:20-25, 65:1-25) (Q: "And you understand that TJX cannot legally employ someone if they don't complete, sign, and provide this form?"  A: "Of course.")  Notwithstanding, Plaintiff refused to provide this form and did not return to work again thereafter.  (P. Dep. 140:19-25, 141:1-5; Lowe Dep. 53:4-25, 54:1-25, 55:1-25, 56:1-25, 57:1-9).  Based on these facts, Plaintiff cannot establish that she was actually terminated by TJX.

Likewise, the circumstances surrounding Plaintiff's separation simply do not present facts that demonstrate Plaintiff had no other option but to resign sufficient to establish constructive discharge.  As explained above, TJX came to Plaintiff and five other employees and told them that they lost their onboarding new-hire documents due to a technological glitch. (Lowe Dep. 46:5-25; P. Dep. 137:6-25, 138:1-10; Saunders Dep. 23:2-25, 24:1; Ex. C, TJX's Interrogatories Responses).  Despite TJX's best efforts, the original onboarding paperwork was not recovered.  (Lowe Dep. 46:5-25).  TJX's request to Plaintiff and five other employees to complete replacement new-hire onboarding documents due to its inadvertent loss of the originals does not present circumstances so intolerable that Plaintiff had no other option but to resign.

*Cripe, Inc.*, 834 N.E.2d at 735. Plaintiff cannot show that a reasonable person faced with the same conditions of employment would have no reasonable alternative except to quit. Indeed, all the five other Store Associates whose paperwork was also misplaced completed replacement paperwork without incident. (Lowe Dep. 46:5-25; Saunders Dep. 23:2-25, 24:1; Ex. C, TJX's Interrogatories Responses). Lowe and Saunders gave Plaintiff numerous opportunities to complete replacement paperwork - most significantly, a replacement I-9 Form, without which TJX could not continue to employer her - but each time she refused and then ultimately opted to walk off the job rather than sign replacement paperwork. (Lowe Dep. 48:1-25, 49:18-25, 50:1-23; P. Dep. 138:1-19; Saunders Dep., 24:2-24, 25:1-21). Simply put, Plaintiff's claim should be dismissed with prejudice because she cannot establish that TJX discharged her.

**B.      Plaintiff's Employment Separation Has No Casual Connection To Her Protected Activity.**

Even if Plaintiff could show that TJX terminated her employment, her claim must still be dismissed because she cannot demonstrate a causal connection between the filing of her workers' compensation claim and the separation of her employment. In order to survive a motion for summary judgment in a *Frampton* case, a plaintiff must show more than a filing of a worker's compensation claim and the discharge itself. *Watkins v. Sommer Metalcraft Corp.*, 844 F. Supp. 1321, 1326 (S.D. Ind. 1994) (citing *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420-21 (7th Cir. 1990)).

The plaintiff must present evidence which either directly or indirectly implies the necessary inference of causation between the two acts. *Id.* Examples of indirect proof of causation can include proximity in time between the two acts and that an employer's proffered reason for termination which is patently inconsistent with the evidence before the court. *Id.*; *Byerly v. Prairie Farms Dairy, Inc.*, No. 2:15-CV-401-WTL-MJD, 2017 WL 3117013, at *2

(S.D. Ind. July 21, 2017) (quoting *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002) (internal citation omitted)) (To survive a motion for summary judgment on a *Frampton* claim, "the employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext.")  Timing evidence alone, however, rarely creates a jury issue on causation.  *Caskey v. Colgate–Palmolive Co*., 535 F.3d 585, 594 (7th Cir. 2008) (dismissing Frampton claim when the plaintiff relied heavily on timing (*i.e.*, the fact that she was disciplined shortly after her injury, and terminated shortly after that), but omitted significant intervening events, including a series of unexcused absences in violation of a performance agreement).

Becerra cannot establish that TJX's asserted lawful reason for her employment separation is inconsistent with the evidence before the Court or pretext.  In *Byerly*, the Southern District of Indiana dismissed an employee's *Frampton* claim because, among other reasons, by his own admission, he was unable to return to work at the end of an extended leave of absence.  *Byerly*, 2017 WL 3117013, at *3.  The Court found that this was a lawful reason for his termination and he had not shown it to be pretextual.  *Id.*

Similarly, as explained above, Plaintiff's employment ended due to intervening events, namely, TJX's discovery that it had lost Plaintiff's onboarding forms and Plaintiff's failure to provide a replacement I-9 Form to TJX.  It is undisputed that TJX inadvertently lost new-hire onboarding documents originally signed by six employees, including Plaintiff. (Lowe Dep. 46:5-25; P. Dep. 137:6-25, 138:1-10; Saunders Dep. 23:2-25, 24:1; Ex. C, TJX's Interrogatories Responses).  Lowe and Saunders gave Plaintiff every opportunity to complete replacement paperwork, but unlike all of the other employees - who completed replacement onboarding

documents without incident - Plaintiff admits that she flatly refused to do so, knowing full well TJX could not continue to employ her without an I-9 Form.  (Lowe Dep. 46:5-25, 48:1-25, 49:18-25, 50:1-23, 53:4-25, 54:1-25, 55:1-25, 56:1-25, 57:1-9; P. Dep. 64:20-25, 65:1-25, 138:1-19, 140:19-25, 141:1-5; Saunders Dep., 23:2-25, 24:1, 24:2-24, 25:1-21; Ex. C, TJX's Interrogatories Responses).  Plaintiff simply cannot show that TJX's explanation that it lost her onboarding paperwork is untrue and she freely admits that she refused to provide a replacement signed Form I-9.  Moreover, the fact that TJX lost five other employees' paperwork and asked them to re-sign this paperwork, who did so without incident and without bringing a claim against TJX for the loss related to the same, demonstrates that these circumstances were not unique to Plaintiff and certainly had no connection to her workers' compensation claim.  (Lowe Dep. 46:5-25; Saunders Dep. 23:2-25, 24:1; Ex. C, TJX's Interrogatories Responses).  Simply put, Plaintiff's claim should be dismissed with prejudice because she cannot establish that TJX's proffered reason for why Plaintiff's employment ended are inconsistent with the evidence before the Court or untrue.  *Byerly*, 2017 WL 3117013, at *3. (citing *Powdertech*, 776 N.E.2d at 1263 (reversing and remanding with instructions to enter summary judgment in favor of the employer on employee's *Frampton* claim because employer presented a legitimate, nondiscriminatory reason for the employee's termination, and the employee was unable to show pretext)).

## CONCLUSION

As detailed above, and based on the evidence cited herein, Defendant The TJX Companies, Inc. has established that there is no genuine issue of material fact on Plaintiff Elizama Becerra's claims.  As a result, Defendant's motion for summary judgment should be granted in its entirety.

Date: January 10, 2022                          Respectfully submitted,

                                                     The TJX Companies, Inc.

                                                     By: *s/ Christina Jaremus*_____
                                                        One of Its Attorneys

Uma Chandrasekaran
uchandrasekaran@seyfarth.com
Christina Jaremus
cjaremus@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2022, I filed **Defendant's Motion for Summary Judgment** electronically with the Clerk of the Court using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorney of record:

> Kyle F. Biesecker, #24095-49
> 411 Main Street
> Evansville, Indiana 47708
> Phone: (812) 424-1000
> Fax: (812) 424-1005
> Email: kfb@bdlegal.com
> *Attorney for Plaintiff Elizama Becerra*

*s/ Christina Jaremus*
Christina Jaremus
